IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| PIPE FITTERS' RETIREMENT FUND, ) <br> LOCAL 597, ET AL, ) <br>   ) <br> Plaintiff, ) <br>   ) Case No. 1:17-cv-04249 <br> vs. ) <br>   ) Judge Matthew F. Kennelly <br> J & B MECHANICAL, INC., ) Magistrate Judge Sheila Finnegan <br>   ) <br>   ) <br> Defendants. ) | |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO VACATE JUDGMENT DATED AUGUST 20, 2018 PURSUANT TO FED.R.CIV.P. 60(B)**

Defendant, J & B Mechanical, Inc. ("J & B) in Reply in Support of its Motion pursuant to Federal Rules of Civil Procedure 60(b), states as follows.

**STATEMENT OF THE CASE**

Summary Judgment was entered on August 20, 2018, in the amount of $487,650.76, following a Summary Judgment Motion filed by plaintiff's counsel who has four times previously in seven years, filed suit against this contractor for the same fringe benefit funds and union. *See* Def. Mem. in Supp. of Motion to Vacate (Def. Mem.), docket #58, Exh.s A -L. The plaintiff's Summary Judgment Motion in this case (*see Motion* docket # 24, and *Pl. Mem.*, docket #25) was again supported by sworn declarations submitted pursuant to 28 U.S.C. § 1726, by (1) the same plaintiff's counsel, Johnson and Krol, LLC, supported again by, (2) Michael Maloney, Field Representative and Collection Coordinator for the same plaintiff Funds and Union (*cf.* Exh. 6, docket #26 *with* Exh. L, docket #58-12, and Exh. 7 to Exh. M, docket #60-1, pages 52-54 of 173 *and* Exh. 8, to Exh. M, docket 60-1, pages 77-78 of 173); (3) Jilian Rymek, the same individual auditor and (4) the same auditing company, Costin, Hammel & Leake, LLC,

that previously audited defendant J & B, in the prior lawsuits. *Cf.* Def. Mem. in Supp. of Motion to Vacate, docket # 59-1 at p. 33-36 of 159, Exh. 2 to Exh. M *with* Exh. 6, to Exh. M, docket #58-7 at 17 of 24 (6/30/15 audit claiming only $691.36 owed, docket 58-78, page 16 of 24, signed by Rymek at 17 of 24).

In the four previous lawsuits not, a single one ever claimed J & B owed anywhere near $487,650.76 in fringe benefits. The 2010 lawsuit was dismissed without prejudice, two months after it was filed when J & B agreed to an audit. Def. Mem. Exh.s A and B, docket #58-1 and 2.

Plaintiffs sued again three months later, and again dismissed the lawsuit within three months without prejudice and without a judgment when another audit was agreed to. Exh.s C and D, dockets 58-3 and 4.

In 2015 they sued again – this time asking for service by the Secretary of State, <u>*barely a month after the lawsuit was filed*</u>, obtaining service on the Secretary then using that service to get a default judgment, settling out of court three months after suit was filed. Exh. F, docket 58-5.

They sued again less than a year later, again serving the Secretary of State, again obtaining a default judgment, this time for $6,144.33 in unpaid contributions (docket #21 to Exh. I, docket 58-9 at page 8 of 9.)

A few months later, they sued again, Exh. K, docket 58-11, this time obtaining a default judgment for *three-months* of unpaid fringe benefits including penalties and fees which was paid by defendant (*see* docket # 17 in docket # 58-11 at 15 of 15.)

A month later, *this* lawsuit was filed.

Not one of these lawsuits until now ever sought a six-figure judgment. The largest judgment until now was only for a *three-month delinquency period*. Even the complaint in this lawsuit did not seek a six-figure judgment. Moreover, the defaults mostly came because of

service on the Secretary of State instead of the defendants directly. One would think that after multiple lawsuits, Johnson and Krol would have J & B's contact information in their outlook file or google app. Apparently not.

As we noted in our opening brief, in the last audit/lawsuit, J & B submitted affidavits from three people who made up the bulk of the last audit as they do now, namely:

> Brandon L. Abruzzo
> Tyler J. Clements
> Russell J. Matthes

*In the last case, the challenges on these individuals were accepted by the fringe benefit funds and the lawyers in this case.* We have provided this court with the affidavits from the prior case and the affidavits that relate to the present case that show these people are not pipefitters. The affidavits from 2015 and 2018 are from the same individuals.[1]

We have also provided sworn declarations from the principals of J & B, telling the court that the audit challenges/affidavits were accepted last time. It is unrebutted by the plaintiffs in their response to our memorandum that the same individuals for the plaintiff who came before this court and sought judgment in *this case* based on these same individuals, *are the same people who last time accepted that these three people are not pipe fitters.* Plaintiff has provided *no admissible evidence in their response to deny this.*

Thus, this court has before it unrebutted, admissible evidence that these three individuals are not pipe fitters and don't belong in the audit. They were challenged in the last audit and lawsuit and the challenges were accepted.

---

[1] The Abruzzo affidavit from July 14, 2018 is Exh. 12 to Def. Mem. in Opp., Clements affidavit is Exh. 13, July 12, 2018, and Matthes, Exh. 14, dated July 21, 2018 is attached to Exh. M, docket # 59-1; the 2015 affidavits are attached as Exh.s 4 (docket #59-1 at pages 49-102 of 159), 5 (docket #59-1, pages 103-156 of 159), and 6 (docket #59-1, pages 157-159, and docket #60-1, pages 1-51 of 173) to Exh.s M. They are also attached to Exh. N, docket # 62-1.

What plaintiffs have given the court in their response, is unsworn hearsay in the form of: (1) a hearsay "Linked-in" internet reference and (2) another internet hearsay reference that at a subsequent employer for Matthes, he is listed as a service technician.[2] This "evidence" is inadmissible hearsay and is not authenticated by an affidavit or declaration. It proves nothing with respect to what Matthes did for J & B. It does not counter his sworn affidavits (two of them) or those of the rest of the J & B current or former employees. Nor does it counter the fact that all the people plaintiff presented declarations for in support of its Summary Judgment Motion, previously accepted the fact that Matthes and the others did not work with the tools or do pipefitter work while employed by defendant.

Not only is this uncontroverted, admissible evidence that J & B has a meritorious defense, but also it shows that the plaintiff, its Field Coordinator, auditor, auditing company, and lawyers, knew better than to try and seek a judgment based on these individuals.[3] They knew or with very little effort objectively, should have known better.[4]

### WHAT'S WRONG WITH PLAINTIFF'S RESPONSE TO OUR MOTION

A. **"Excusable Neglect" of the Type Here is Recognized by the Seventh Circuit Under Rule 60(b)(1) Based on the Supreme Court's Decision in *Pioneer Insurance Services Co. v. Brunswick Associates Ltd. Partnership,* in the Seventh Circuit cases of *Robb v. Norfolk & Western Ry. Co., Matter of Bulic, and Matter of Singson***

---

[2] Plaintiff's Mem. at 13. Plaintiff takes issue with the fact that Matthes made $70,000 while working for J & B, each year. He wasn't supposed to be paid? No one ever said he didn't work for J & B, just that he never worked with the tools.

[3] Which is why in part, J&B seeks relief from this Court's Final Judgment under 60(d)(3) or (d)(3), for plaintiffs engaging in a "fraud on the court." While 60(b)(3) or 60(d)(3) are "exceptional remedies" that should only be allowed "upon a showing of extraordinary circumstances," we believe that *there is* a "substantial danger" here based on these facts "that the underlying judgment was unjust." *Penny Theater Corp. v. Plitt Theatres, Inc.*, 812 F.2d 337, 340 (7th Cir. 1987) (quoting *Margoles v. John*, 798 F.2d 1069, 1073 (7th Cir. 1986). Thus we believe, factually, that Rule 60(b)(3) relief is justified under *Bakery Machinery & Fabrication, Inc. v. Traditional Baking, Inc.*, 570 F.3d 845, 848 (7th Cir. 2009) (quoting *Reinsurance Co. of America Inc. v. Administratia Asigurarlior de Stat*, 902 F.2d 1275, 1277 (7th Cir. 1990).

[4] Abruzzo is picked up in the audit for $9,198.00, in findings, Clements for $64,497.50, Martinez for $21,630, Matthes for $198,901.50, and Slavich for $23,065, which adds up to $317,291.50 which is basically the entire audit. Exh. 1, to Exh. M, docket # 59-1, page 11 of 159.

We do not dispute that the Seventh Circuit defines "excusable neglect" circumspectly under Rule 60(b)(1).[5] However, the Seventh Circuit in *Robb v. Norfolk & Western Ry. Co.,* 122 F.3d 354, 358-59 (7th Cir 1997), *suggestion for en banc, denied* (Sept. 12, 1997), has also noted that the courts should not define "neglect" under 60(b)(1) too narrowly, citing to the Supreme Court's decision in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).

In *Robb* the Seventh Circuit, citing to *Pioneer* emphasized the focus of the Supreme Court's discussion of "the equitable nature of a court's 'excusable neglect' determination [that clarifies] that 'excusable neglect' [can] 'encompass situations in which [such things like] the failure to comply with a filing deadline" which is "attributable to negligence," and therefore constitutes excusable neglect. 122 F. 3d at 355-56, *citing* 507 U.S. at 394, 113 S.Ct. at 1497. Consistent with *Pioneer,* the Seventh Circuit in *Robb*, remanded the case for determination of whether the district judge should exercise his discretion on behalf of the plaintiff-appellant and vacate a judgment where the plaintiff's lawyer missed a summary judgment filing deadline.

The Seventh Circuit in *Robb* held that a "narrow interpretation" of the word "neglect" is *inconsistent* with the term's "ordinary and contemporary meaning" (*citing* 507 U.S. at 388, 113 S.Ct. at 1494-95). Therefore, the court held that the determination of what amounts to "excusable neglect," as the Supreme Court said in *Pioneer,* is "'*an equitable one*, taking account of *all the relevant circumstances* surrounding the party's omission. . ..'" 122 F.3d at 359, *citing* 507 U.S. at 395, 113 S.Ct. at 1496. [Emphasis in original.]

The Seventh Circuit emphasized that "the approach set forth by the Supreme Court in *Pioneer* [under Rule 60(b)] . . . is clear [,] that a trial court has [the] *discretion* to consider the equities. . . [W]e do not agree with the trial judge's broad statement [in this case] that 'the Seventh Circuit's post-*Pioneer* decisions have not modified the rule that attorney negligence *cannot constitute* excusable neglect.' At least two of our post-*Pioneer* decisions . . . explicitly acknowledge[ ] that *Pioneer* broaden[s] the

---

[5] *See* Plaintiff's reference to *Cato v. Thompson*, 118 Fed. Appx. 93, 96-97, 2004 WL 2828955, *3 (7th Cir. 2004) at page 6 n.3 of Pl. Mem.

definition of 'excusable neglect. . . .'" 122 F.3d at 359 [emphasis in original], *citing Matter of Bulic*, 997 F.3d 299, 302 (7th Cir. 1993) (omissions through carelessness and mistake) and *Matter of Singson*, 41 F.3d 316 (7th Cir. 1994) (excusable neglect without "extraordinary circumstance.")

If missing a deadline can constitute excusable neglect, then the failure to present the affidavits of the three individuals who comprise the bulk of an audit to challenge the audit findings, as well as affidavits challenging the findings on the two additional individuals on the audit should also constitute excusable neglect. *See, e.g.,* Gil Martinez Aff. at Exh. 14 to Exh. M, docket # 59-1, page 5 of 159 ¶ 55, docket # 61-1, pages 77-129 of 182); Anthony E. Slavich, Aff., Exh. 15 to Exh. M, # docket 59-1, page 5 of 159, ¶ 55, docket # 61-1, pages 130-182 of 182.

The issue is not as plaintiff's counsel frames it, whether the defendant's prior attorney Mr. Somen has been disciplined by the ARDC or ever sued for malpractice. The issue is whether when given these affidavits by his clients, his failure to submit them allows this court the equitable basis to vacate the judgment. (*see* Declarations, Exh. M, at ¶¶ 52-56,[6] docket # 59-1 page 5 of 159; Exh. N, ¶¶ 54, 65-69, docket # 62-1, pages 5-6 of 184.)

**B. The Audit is Not a "Reasonable Calculation" of Alleged Amounts Owed to the Plaintiffs**

We do not know how the Plaintiffs can say the audit results presented, based on this record and as described above, represent a "reasonable calculation of the amounts owed to plaintiffs." Pl. Mem. at 9. There is no way this audit based on individuals previously taken out of the prior audit, can be based on "sound accounting" principles.[7] Thus defendant is entitled to relief under Rules 60(b)(3) and (d)(3).

---

[6] John Slavich in his sworn Declaration states that: ¶ 52 – he and his wife advised counsel they had affidavits and counsel did not act on this information before filing his response to the summary judgment motion; ¶ 53, they provided him with copies of the 2015 affidavits to be submitted to the court; ¶ 54, the new affidavits were bolstered by the employees' job applications attached to show what jobs they applied for; ¶¶ 54 and 55, they provided additional affidavits for the two new people picked up on the audit, including their son who was picked up as a working contractor when he is just a young kid trying to find himself, working as a "go-fer."*See also,* Aff.s of Gil Martinez, Exh. 14 to Exh. M, docket # 59-1, page 5 of 159 ¶ 55, docket # 61-1, pages 77-129 of 182) and Anthony E. Slavich, Exh. 15 to Exh. M, # docket 59-1, page 5 of 159, ¶ 55, docket # 61-1, pages 130-182 of 182.

[7] There is no way this auditor could have been as "meticulous" as plaintiffs claim (*see* Pl. Mem. at 11) in completing the audit if she didn't even look at her last audit file, in particular the fact that the individuals she picked up had submitted affidavits that had been honored by the union and the lawyers in the prior case.

The audit in question which is attached as Exh. 1, to Exh. M, docket # 59-1, pages 7- 32 of 159, picks up the following individuals:

> Brandon Abruzzo
> Anthony E. Slavich
> Gil Martinez
> Russell J. Mattes
> Tyler Clements

Exh. 1 to Exh. M, Docket # 59-1 at page 11 of 159. These individuals represent 100% of the audit. If the affidavits provided are honored as they should be, this contractor owes nothing. If they owe nothing, then the entire judgment entered against them was abusive and the Pipefitters have some explaining to do.

### C. The Prejudice and the Equities Favor the Defendant

Again, we do not understand how the plaintiff can argue that the equities favor them or that the funds will be damaged if this judgment is vacated. The people in the audit are not pipefitters and never have been. They are not entitled to fringe benefits.

If pension benefits are collected for them, they will never earn a pension based on a year or two of benefits. The pension fund will obtain a windfall because those funds will be paid in and never paid out. A union contractor will be put out of business by the union which will result in union pipefitters being put out of work.

Not vacating this judgment makes no sense.

### CONCLUSION

For the reasons stated above, we ask that the judgment entered in this case be vacated.

> Respectfully Submitted,
> J & B Mechanical, Inc.
>
> By: /s/ L. Steven Platt
> One of their attorneys

L. Steven Platt
Robbins, Salomon & Patt, Ltd.
180 N. LaSalle, Suite 3300
Chicago IL 60601
(312) 782-9000
Lsplatt@rsplaw.com